1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELINA GARCIA AMAYA, | Case No. 1:20-cv-01824-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI[1], Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |
| _____/ | |

## I.   INTRODUCTION

On December 28, 2020, Plaintiff Angelina Garcia Amaya ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

///

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").  .

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 9.)

## II.  BACKGROUND

On August 6, 2018, Plaintiff protectively filed applications for DIB and SSI payments, alleging she became disabled on July 1, 2014—subsequently amended to November 22, 2017 (*see* Administrative Record ("AR") 334)—due to gastroesophageal reflux disease.  (AR 219, 226, 254.) Plaintiff was born on January 17, 1966, and was fifty-one years old as of the amended alleged onset date.  (AR 250.)  Plaintiff obtained a GED in 1994, has past work experience as a clerk, and can communicate in English.  (AR 255–56.)

### A.  Relevant Medical Evidence[3]

#### 1.  Luis Archila, PA-C

On November 22, 2017, Plaintiff established care with Luis Archila, a physician's assistant ("P.A.").  (AR 394.)  Plaintiff complained of chronic right shoulder pain.  (AR 394.)  Upon examination, P.A. Archila found no evidence of joint pain, tenderness, or deformity.  (AR 396.) Plaintiff was found to have a full range of motion intact to all major points, in addition to normal bulk and tone for her age. (AR 396.)  Plaintiff was not in any acute distress.  (AR 396.)  Treatment notes from April 19, 2018, recorded similar findings.  (AR 367.)

On January 18, 2018, Plaintiff complained of chronic shoulder pain.  (AR 391.)  Plaintiff reported that she had been participating in routine exercise, specifically biking and walking.  (AR 392.)

On September 24, 2018, Plaintiff presented for a routine follow-up.  (AR 419.)  P.A. Archila noted that Plaintiff was not in any acute distress.  (AR 421.)  Treatment notes indicated that Plaintiff's movements in both shoulders were "painful with abduction beyond 45 degrees and internal rotation beyond 30 degrees."  (AR 421.)

On September 13, 2019, Plaintiff presented for care, complaining of ongoing pain in her shoulders. (AR 470.)  P.A. Archila examined Plaintiff and found that movement in both shoulders was restricted and painful.  (AR 473.)  Plaintiff was not in any acute distress.  (AR 472.)

///

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

### 2. Fresno Imaging Center

On January 19, 2018, Plaintiff had x-rays of her right shoulder and knee. (AR 341.) Based on the imaging of Plaintiff's knee, the radiologist noted mild degenerative changes. (AR 340.) With regard to Plaintiff's shoulder, findings were as follows: "Bony ossification, joint spaces, and soft tissues are remarkable for a mild decrease in the subacromial space. Spurring is seen at the AC joint. There are cystic changes seen in the femoral head region. No fracture lines or dislocations evident." (AR 341.) Degenerative changes of Plaintiff's right shoulder were noted. (AR 341.)

On December 12, 2018, Plaintiff had an MRI without contrast of her right shoulder. (AR 425.) The radiologist's impression was that Plaintiff had "[r]otator cuff tendinosis with low-grade bursal sided fraying of the supraspinatus tendon." (AR 426.) No high-grade partial or full-thickness rotator cuff tear was detected. (AR 426.) The radiologist also noted "[m]ild degenerative signal at the superior labrum near the biceps anchor without discrete labral tear" and moderate acromioclavicular osteoarthritis. (AR 426.)

On September 13, 2019, Plaintiff had an x-ray of her cervical spine. (AR 457.) The radiologist noted "[d]egenerative findings of the cervical spine with mild loss of intervertebral disc heights at C3-4, C5-6, and C6-7," in addition to "[b]ilateral mild osseous neuroforaminal narrowing at C3-4 with mild right osseous neural foraminal narrowing at C5-6." (AR 457.)

### 3. State Agency Physicians

On September 24, 2018, L. Bobba, M.D., a state agency physician, reviewed the record and opined that Plaintiff's impairments were not severe. (AR 71, 79.) Upon reconsideration on December 6, 2018, another state agency physician, A. Khong, M.D., reviewed the record and determined that Plaintiff's osteoarthrosis and allied disorders were severe. (AR 88, 98.) Dr. Khong then assessed Plaintiff's physical residual functional capacity ("RFC")[4], opining that Plaintiff was

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

limited to: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for a total of six hours; sitting for "[m]ore than 6 hours on a sustained basis in an 8-hour workday"; occasionally crawling; and never climbing lappers/ropes/scaffolds.  (AR 90, 100.)  Dr. Khong further opined that Plaintiff should never reach above shoulder level due to bilateral shoulder pain.  (AR 91, 101.)

### 4.    Latavia Esters, PA-C

On February 16, 2019, Plaintiff complained of pain in her right shoulder.  (AR 499.)  Upon examination, P.A. Esters found Plaintiff to have decreased range of motion in her right upper extremity; range of motion in Plaintiff's left upper extremity was normal.  (AR 502.)

### 5.    Sanagaram Shantharam, M.D.

On May 8, 2019, Plaintiff presented for an appointment, complaining of right shoulder pain. (AR 453.)  Dr. Shantharam, an orthopedic surgeon, found that Plaintiff's right shoulder had a diminished range of motion, in addition to "slight weakness of the rotator cuff strength" and positive impingement.  (AR 454.)

### 6.    Rustom Damania, M.D.

On November 1, 2019, Dr. Damania, a consultative examiner, performed an internal medicine evaluation of Plaintiff.  (AR 434–38.)  Upon examination, Dr. Damania noted that Plaintiff had "some pain" while moving both of her shoulders.  (AR 437.)  Plaintiff's shoulder abduction, flexion, adduction, external rotation, internal rotation, and extension were all found to be within normal limits.  (AR 437.)  Plaintiff was also found to have 5/5 motor strength in all extremities and "good active range of motion."  (AR 437.)  Dr. Damania ultimately assessed Plaintiff with calcific tendonitis in her left shoulder, among other diagnoses.  (AR 438.)  Based on his examination of Plaintiff, Dr. Damania opined to the following physical limitations on Plaintiff's ability to do work-related activities: lift/carry 50 pounds occasionally and 20 pounds frequently; occasionally reach in all directions bilaterally; occasionally climb ladders and scaffolds; and frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  (AR 428–31.)  Dr. Damania further opined that Plaintiff should never be exposed to unprotected heights.  (AR 432.)  Dr. Damania indicated that his

assessed limitations were based on Plaintiff's calcific tendinitis in her shoulders, which he did not expect to last for twelve consecutive months.  (AR 428, 430, 433.)

### 7.  Lalaine Tiu, M.D.

On January 16, 2020, Plaintiff presented to Dr. Tiu, complaining of right finger pain.  (AR 510.)  Dr. Tiu examined Plaintiff, noting no acute distress.  (AR 510.)  Plaintiff was found to have decreased range of motion in her shoulders, good muscle tone, and no spinal tenderness.  (AR 510.)

### 8.  J.R. Grandhe, M.D.

On January 31, 2020, Plaintiff presented for a pain management consultation.  (AR 439.)  Plaintiff complained of neck and shoulder pain.  (AR 439.)  Plaintiff was not in acute distress.  (AR 440.)  Upon examination, Dr. Grandhe found that Plaintiff had pain with active ranges of motion in both of her upper extremities.  (AR 440.)  Plaintiff also had 5/5 strength and normal reflexes.  (AR 440.)

### B.  Administrative Proceedings

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on September 25, 2018, and again on reconsideration on December 14, 2018.  (AR 108, 119.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 125.)  At the hearing on May 5, 2020, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 37, 41–58.)

### 1.  Plaintiff's Testimony

Plaintiff testified that her right shoulder was "most problematic" for her.  (AR 47.)  Her doctor had recommended surgery, and Plaintiff was waiting for "the approval to come."  (AR 48.)  Plaintiff had previously received two injections for her shoulder, but she did not notice any improvement in her pain.  (AR 48.)  Due to her right shoulder problems, Plaintiff stated that she is unable to "lift too much heavy stuff."  (AR 50.)  For example, Plaintiff cannot carry her grandchildren.  (AR 50.)  Plaintiff can hold a gallon of milk using both of her hands, but she can do so with her right hand for only seconds.  (AR 51.)  Plaintiff is also unable to "stretch her arms"; "it hurts if [she] stretch[es] it like way up[.]"  (AR 50.)  Stretching her arms to her back and reaching out in front of herself causes her pain.  (AR 52.)  According to Plaintiff, she cannot carry

a purse because it hurts her arm and shoulders.  (AR 51.)  Additionally, she can only wash dishes for about ten minutes because she needs to bring her arms and hands back down due to pain.  (AR 52.)  Plaintiff's difficulties with reaching with her left upper extremity are "not as bad" compared to her right upper extremity.  (AR 55.)

Plaintiff further testified that she experiences neck pain all the time.  (AR 53.)  On a scale of one to ten, Plaintiff rated her pain a six on an average day and an eight or nine on a really bad day.  (AR 53.)  Plaintiff stated that her pain is triggered by her "repeatedly doing something for a long period of time," such as putting on makeup.  (AR 53.)  Plaintiff also has pain in her right knee, which flares up once or twice a week.  (AR 54–55.)

Plaintiff testified that she is able to drive but was not doing so because her license had expired.  (AR 42.)  She sometimes goes grocery shopping with her mother when she is "feeling up to it."  (AR 42.)  During the day, Plaintiff mainly stays home with her mother, watches television, and cleans up their living space "a little."  (AR 42.)  According to Plaintiff, she is unable to "do very much to even just sweep and mop" because her arms "are killing [her] by the time she is finished.  (AR 42.)  Plaintiff testified that she is able to care for herself, in terms of bathing, changing, and eating, but just "barely."  (AR 55.)  She performs her activities of daily care "very slowly."  (AR 55.)  Plaintiff stated that she sometimes had difficulty wiping after using the toilet because it is hard for her to reach around her back.  (AR 56.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff's past work all fell within the position of administrative clerk, Dictionary of Operational Titles ("DOT") code 219.362.010, which was light and semi-skilled work, with a specific vocational preparation ("SVP")[5] of 4.  (AR 59.)  The VE stated that Plaintiff carried out the position "at different levels for different jobs, but all the way up to the medium level."  (AR 59.)

The ALJ asked the VE to consider a person of Plaintiff's age, education, and work

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over ten years of preparation).  *Id*.

experience.  (AR 59.)  The VE was also to assume this person could: lift 20 pounds occasionally and 10 pounds frequently; stand/walk for about six hours; sit for more than six hours; never climb ladders, ropes, and scaffolds; occasionally crawl; and never reach overhead bilaterally.  (*Id.*)  The VE testified that person be able to perform the work of an administrative clerk at the sedentary or light levels.  (AR 59–60.)  In response to whether such a person could perform any other work in the national economy, the VE testified that such a person could perform light, unskilled jobs with an SVP of 2, such as document scanner, DOT code 207.685.018; routing clerk, DOT code 222.587.-038; and information clerk, DOT code 237.367-018.  (AR 60–61.)

Plaintiff's counsel asked the VE to consider a person with the limitations in the ALJ's hypothetical, but with the following modifications: limited to simple and routine tasks; lifting 10 pounds occasionally and less than 10 pounds frequently; and occasional bilateral reaching in all directions.  (AR 62–63.)  The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the job of call-out operator, DOT code 237.367-014.  (AR 63.)

**C.    The ALJ's Decision**

In a decision dated May 29, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 19–28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 21–28.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 22, 2017, the amended alleged onset date (step one).  (AR 21.)  At step two, the ALJ found Plaintiff's following impairment to be severe: osteoarthrosis.  (AR 21.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 22.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC

to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can occasionally crawl, never climb ladders, ropes, or scaffolds, and never reach overhead bilaterally.

(AR 23.)[6]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not fully substantiated by the medical signs, laboratory findings and other evidence of record[.]"  (AR 24.)

The ALJ determined that, given her RFC, Plaintiff was able to perform her past relevant work as an administrative clerk (step four).  (AR 27.)  Thus, the ALJ concluded that Plaintiff was not disabled.  (AR 28.)

On June 9, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which the Appeals Council denied on October 28, 2020.  (AR 1, 7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.      LEGAL STANDARD

#### A.      Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

---

[6] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 416.967(b).  Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

### B.    Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*,

*Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in rejecting (1) Drs. Tiu's and Damania's opinions that Plaintiff was limited to occasionally reaching in all directions bilaterally; and (2) Plaintiff's testimony regarding her subjective complaints. (Doc. 16 at 7–13.) For the reasons stated below, the Court determines the ALJ did not err.

### A.    The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1.    Legal Standard

On January 18, 2017, the Social Security Administration published comprehensive revisions

to its regulations regarding the evaluation of medical evidence.  *See* 82 Fed. Reg. 5844.  For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness."  *Id.*  In determining how "persuasive" the opinions of a medical source or PAMF are, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors."  20 C.F.R. § 404.1520c(b), (c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 404.1520c(a)–(b).  In all cases, the ALJ must at least "explain how [the ALJ] considered" the supportability and consistency factors, as they are "the most important factors."  20 C.F.R. § 404.1520c(b)(2).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion or PAMF] will be." 20 C.F.R. § 404.1520c(c)(1).  For consistency, the regulations state: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ is required to articulate findings on the remaining factors (relationship with the claimant, specialization, and "other") only where "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record."  20 C.F.R. § 404.1520c(b)(2) & (3).  An ALJ may address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 404.1520c (b)(1).

Prior to the new regulations, the Ninth Circuit held that "[t]o reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198  (quoting *Bayliss v. Barnhart*, 427 F.3d

1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are

supported by substantial evidence."  *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v.*

*Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Several district courts have continued to apply the "specific and legitimate" standards for

articulation, also noting that the Ninth Circuit has yet to weigh in on this issue.  *See Kathleen G. v.*

*Commissioner of Social Security*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov.

10, 2020) (noting that "the new regulations . . . do not clearly supersede the 'specific and legitimate'

standard"); *cf. Thompson v. Comm'r of Soc. Sec.*, No. 2:20–CV–3–KJN, 2021 WL 1907488, at *3

n.3 (E.D. Cal. May 12, 2021) (noting "it is not yet clear how much the new regulations affect other

Ninth Circuit principles governing Social Security review," but concluding that, "[i]n the absence

of binding interpretation by the Ninth Circuit, the court joins other district courts in concluding that

longstanding general principles of judicial review—especially those rooted in the text of the Social

Security Act—still apply to cases filed on or after March 27, 2017.").

Because, as discussed below, the Court concludes that the ALJ gave at least one specific and

legitimate reason supported by substantial evidence for the weight given to Drs. Damania's and

Tiu's opinions, taking into account the opinions' supportability and consistency, the Court does not

reach the issue of whether the new regulations have changed the articulation standard (*see* Doc. 16

at 8; Doc. 17 at 6–10; Doc. 19 at 1–2).  *See Ceja v. Comm'r of Soc. Sec.*, No. 1:20-CV-01267-EPG,

2021 WL 4690742, at *2 (E.D. Cal. Oct. 7, 2021) (adopting same approach).

### 2.    Dr. Khong

Dr. Khong, a state agency physician, reviewed Plaintiff's medical records and opined that

Plaintiff was limited to light work with occasional crawling, and never climbing ladders, ropes, or

scaffolds, or reaching above shoulder level.  (AR 90–91, 100–01.)  The ALJ found Dr. Khong's

opinion "more persuasive" than the other medical opinions, explaining that Dr. Khong "had access

to additional medical records, and his opinion is consistent with the evidence at the hearing level."

(AR 26.)  Specifically, the ALJ noted that Dr. Khong's opinion was supported by x-rays showing

degenerative changes in Plaintiff's right shoulder and treatment notes reflecting tenderness and pain

with range of motion in the right shoulder.  (AR 26.)  Dr. Khong's opinion was also consistent with consultative examiner Dr. Damania's findings that Plaintiff had a normal gait, no muscle spasms, range of motion in the shoulder within normal limits with some pain, 5/5 strength, intact sensation, and normal reflexes.  (AR 26.)

Plaintiff asserts that the ALJ erred in relying upon Dr. Khong's opinion because Dr. Khong was a "non-examining doctor."  (Doc. 16 at 7–8.)  This contention is without merit.  "In view of the new SSA regulations . . . , [a treating physician's] opinion is on equal ground with non-examining physician opinions."  *Roy v. Comm'r of Soc. Sec. Admin*., No. CV–20–08292–PCT–JAT, 2022 WL 34678, at *2 (D. Ariz. Jan. 4, 2022); 20 C.F.R. §§ 404.1520c, 416.920c  (providing that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.")  Furthermore, the Ninth Circuit has expressly held that "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see also Long v. Saul*, No. 2:19–CV–00334–AC, 2020 WL 5039265, at *9 (E.D. Cal. Aug. 26, 2020) (finding that the ALJ did not err in assigning great weight to the opinion of a non-examining physician, "who had the benefit of reviewing the full medical record, and whose opinion was consistent with those treatment records"); *Runions v. Saul*, 833 F. App'x 121, 124 (9th Cir. 2020) ("The ALJ permissibly gave 'significant weight' to the opinions of the non-examining physicians and psychologists . . . , due to their training, expertise, and knowledge of the Social Security disability program's rules and standards.").  As Plaintiff has not set forth any contentions that the ALJ's reliance on Dr. Khong's opinion is not supported by, and inconsistent with, the medical evidence on record, the Court concludes that the ALJ did not err in finding Dr. Khong's opinion persuasive.

### 3.    Dr. Damania

On November 1, 2019, Dr. Damania performed an internal medicine evaluation of Plaintiff and opined that Plaintiff was limited to lifting and carrying 50 pounds occasionally and 20 pounds frequently, and occasionally reaching in all directions bilaterally.  (AR 430.)  The Court notes that

part of the ALJ's RFC determination—limiting Plaintiff to light work—was ultimately more restrictive than that suggested by Dr. Damania.  (*See* AR 23.)  Plaintiff's assertion of error appears to be based solely on the ALJ's rejection of Dr. Damania's opinion regarding Plaintiff's ability to reach.  (*See* Doc. 16 at 7.)  Dr. Damania opined that Plaintiff was limited to occasionally reaching in all directions bilaterally (AR 430), whereas the ALJ determined, adopting Dr. Khong's opinion, that Plaintiff was limited to never reaching overhead bilaterally  (AR 23).  With regard to the reaching limitations, the ALJ found Dr. Damania's opinion unpersuasive for several reasons.

First, the ALJ explained that Dr. Damania's opined limitations were internally inconsistent: "[t]he mild limitations in lifting and carrying are inconsistent with limitations to occasional reaching."  (AR 27.)  The Court finds that this was not a valid reason to discount Dr. Damania's opinion.  Reaching is an activity distinct from lifting, pushing, pulling, and carrying, as those terms are defined by the Social Security Administration.  *See* SSR 96-8P (classifying "lifting, carrying, pushing, and pulling" as exertional limitations and "reaching" as a manipulative limitation).  Accordingly, Dr. Damania's opinion that Plaintiff had more restrictive limitations in reaching than in lifting and carrying was not necessarily inconsistent.  *See Sharleen H. v. Comm'r of Soc. Sec.*, No. C19-163 JCC, 2019 WL 7343490 (W.D. Wash. Dec. 30, 2019) ("The *Dictionary of Occupational Titles*, on which Social Security regulations rely, assesses lifting, reaching, and handling separately.  There is no support for the ALJ's view that the amount of lifting must be less than or equal to the amount of reaching and handling.")[7]

The ALJ, however, properly found Dr. Damania's opinion unpersuasive because it was unsupported by Dr. Damania's own examination.  An ALJ may properly discount a treating physician's opinion that is unsupported by the medical record, including his own treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the physician's treatment notes "provide no basis for the functional

---

[7] Plaintiff also contends that the ALJ was required to "recontact Dr. Damania for clarification instead of simply rejecting Dr. Damania's opinion" based on this alleged internal inconsistency, because "[t]he ALJ's acknowledgement of ambiguous evidence triggers [their] duty to develop the record and obtain clarification through an appropriate inquiry." (Doc. 16 at 10.)  Given that the Court has determined that the alleged inconsistency in Dr. Damania's opinion was not a valid reason for rejecting that opinion, the Court declines to address whether the ALJ had a duty to contact Dr. Damania to clarify the alleged inconsistency.  In any event, the Court finds any error harmless, as the ALJ articulated other valid reasons for discounting Dr. Damania's opinion.

restrictions he opined should be imposed on [the claimant]").  As the ALJ noted (AR 27), while Plaintiff had "some pain" in moving both of her shoulders, Dr. Damania found that Plaintiff's shoulder abduction, flexion, adduction, external rotation, internal rotation, and extension were all within normal limits.  (AR 437.)  Dr. Damania also found that Plaintiff had 5/5 motor strength in all extremities and "good active range of motion."  (AR 437.)  In view of these normal findings, the ALJ reasonably concluded that Dr. Damania's examination provided support for some limitation on Plaintiff's ability to reach—as reflected in the ALJ's RFC determination that Plaintiff can never reach overhead bilaterally, which is more restrictive than Dr. Damania's opined overhead reaching limitation—but not the limitation of occasional forward reaching in all directions bilaterally as opined by Dr. Damania.  *See Connett*, 340 F.3d at 875.

Furthermore, having reviewed other medical evidence identified by the ALJ (*see* AR 25), the Court cannot conclude that the ALJ's rejection of Dr. Damania's opinion as unsupported by the record was unreasonable.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").  The medical records, at most, are mixed, on some occasions showing findings of slight weakness and reduced range of motion in Plaintiff's right shoulder (*see* AR 454, 502), and painful and restricted movements in both shoulders (*see* AR 473), but on several other occasions showing findings of no joint pain, tenderness, or deformity (*see* AR 367, 396), no acute distress (*see* AR 367, 396, 421, 440, 472), 5/5 strength (*see* AR 440), normal range of motion (albeit sometimes with pain) (*see* AR 367, 396, 421, 440), and normal bulk and tone (*see* AR 367, 396).[8]

Lastly, the ALJ noted that Dr. Damania's opinion was based on Plaintiff's calcific tendinitis in her shoulders, which Dr. Damania stated would not last twelve months or more.  (AR 27.)  To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Chaudhry*

---

[8] In explaining that Dr. Damania's opinion was neither supported by his own treatment notes nor consistent with the broader medical evidence, the ALJ addressed the factors of consistency and supportability as required by the new regulations.

1   *v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  Given that Dr. Damania indicated that Plaintiff's

2   limitations had not lasted, and would not last, twelve consecutive months (AR 433), the duration

3   requirement for a finding of disability was not met.  This was a specific and legitimate reason to

4   find Dr. Damania's opinion unpersuasive.  *See Karpinski v. Berryhill*, 757 F. App'x 631, 633 (9th

5   Cir. 2019) (holding that the ALJ "reasonably took into account [a physician's] opinion that [the

6   plaintiff's] limitations would last eight months, short of the twelve months necessary to establish

7   eligibility for disability benefits" in assigning little weight to the physician's opinion).

8        Plaintiff contends this was not a valid basis to reject Dr. Damania's opinion because other

9   evidence in the record supports that her tendinitis and related symptoms lasted for at least twelve

10  months.  (Doc. 16 at 10.)  Dr. Damania, however, specifically opined that Plaintiff's impairment

11  was not expected to last for twelve consecutive months, and Plaintiff's alternative interpretation of

12  the evidence does not provide a basis for finding error.  *See James H. v. Saul*, No. 1:19–CV–03204–

13  FVS, 2020 WL 6379309, at *8 (E.D. Wash. Sept. 23, 2020) ("[The provider] specifically opined

14  that [the plaintiff's] impairment was not expected to last for a 'continuous period of not less than 12

15  months,' thus, the durational requirement was not met.  This was a specific and legitimate reason

16  for the ALJ to reject [the provider's] opinions.").

17       Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial

18  evidence, for finding Dr. Damania's opinion unpersuasive, and thus did not err.

19       **4.    Dr. Tiu**

20       Dr. Tiu had been treating Plaintiff for approximately three months before she submitted a

21  medical source statement on Plaintiff's behalf on February 22, 2020.  (*See* AR 442–45.)  Dr. Tiu

22  opined, among other things, that Plaintiff could reach in all directions bilaterally only 20 percent of

23  the time in an 8-hour workday.[9]  (AR 444.)  In finding Dr. Tiu's opinion unpersuasive, the ALJ

24  noted that the opinion was given via "a checkbox form" and explained: "[Dr. Tiu] had limited

25  contact with [Plaintiff], and her opinion is inconsistent with the medical record."  (AR 27 (internal

26

27  ---

[9] Plaintiff does not appear to challenge the ALJ's rejection of other limitations opined by Dr. Tiu.  (*See* Doc. 16 at 7 ("The ALJ erred in rejecting the consistent opinions regarding Plaintiff's ability to reach in all directions from treating provider, Dr. Tiu[.]"); Doc. 19 at 4 ("Both Dr. Damania and Dr. Tiu limited Plaintiff to occasional reaching in all directions.").)

28

citation omitted).)

The Court finds that the short length of Dr. Tiu's treatment relationship with Plaintiff does not constitute a valid reason for the ALJ to reject the opinion entirely, especially given that the ALJ found the opinion of Dr. Khong, a state agency physician who has never examined or treated Plaintiff, to be the most persuasive (*see* AR 26).  While length of the treating relationship is one factor to be considered, that cannot be the only reason for rejecting an opinion.  *See* 20 C.F.R. § 404.1520c(c)(3)(i); *Grande v. Colvin*, No. 5:14–CV–05181-PSG, 2015 WL 7454154, at *4 (N.D. Cal. Nov. 24, 2015) ("Considering the short length of treatment, the ALJ properly recognized that [the physicians'] opinions should receive less weight.  However, the limited duration of treatment and the lack of foundation before treatment do not provide substantial evidence for rejecting these opinions entirely[.]").

However, as with Dr. Damania's opinion, the ALJ properly found Dr. Tiu's opinion unpersuasive because it was unsupported by her own treatment notes and the broader medical record.  *See Connett*, 340 F.3d at 875.  As the ALJ noted (AR 27), Dr. Tiu's treatment notes from January 2020 recorded that Plaintiff was ambulatory and not in acute distress, and Plaintiff was found to have good muscle tone, albeit with decreased range of motion.  (AR 510.)  As discussed above, Dr. Damania's examination findings were also generally normal.  For example, Plaintiff's shoulder abduction, flexion, adduction, external rotation, internal rotation, and extension were all found to be within normal limits.  (AR 437.)  Plaintiff also had 5/5 motor strength in all extremities and "good active range of motion."  (AR 437.)  Other examinations revealed findings of no joint pain, tenderness, or deformity (*see* AR 367, 396), no acute distress (*see* AR 367, 396, 421, 440, 472), 5/5 strength (*see* AR 440), normal range of motion (albeit sometimes with pain) (*see* AR 367, 396, 421, 440), and normal bulk and tone (*see* AR 367, 396).  Given these unremarkable findings, the ALJ reasonably concluded that the medical evidence provided support for some limitations on Plaintiff's ability to reach, but not to the degree opined to by Dr. Tiu.

Additionally, as the ALJ observed (AR 27), Dr. Tiu's opinion was mainly given in the form of a checklist, with little information as to what clinical findings supported the opinion or why any particular section on the checklist was marked.  (*See* AR 442–45.)  "A treating physician's opinion

1  that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ."

2  *Gomez v. Berryhill*, No. 1:17–cv–01035–JLT, 2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019)

3  (citation omitted).

4      In sum, the Court finds that the ALJ's reasons for finding Dr. Tiu's opinion unpersuasive

5  are specific and legitimate and supported by substantial evidence.

6      **B.     The ALJ Properly Discounted Plaintiff's Testimony**

7          **1.     Legal Standard**

8      In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ

9  must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First,

10 the ALJ must determine whether the claimant has presented objective medical evidence of an

11 underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The

12 claimant is not required to show that their impairment "could reasonably be expected to cause the

13 severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused

14 some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

15 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only

16 reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and

17 convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

18          The ALJ may consider many factors in weighing a claimant's credibility, including
            (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
19          for lying, prior inconsistent statements concerning the symptoms, and other
            testimony by the claimant that appears less than candid; (2) unexplained or
20          inadequately explained failure to seek treatment or to follow a prescribed course of
            treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported
21          by substantial evidence, the court may not engage in second-guessing.

22 *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v.*

23 *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may

24 consider include a claimant's work record and testimony from physicians and third parties

25 concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social*

26 *Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

27      The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

28 demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

### 2.    Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 24.)  The ALJ also found that "[Plaintiff's] allegations as to the nature, intensity, persistence, and limiting effects of those symptoms are not fully substantiated by the medical signs, laboratory findings and other evidence of record[.]"  (AR 24.)  Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Here, the ALJ properly discounted Plaintiff's testimony because it was unsupported by the objective medical evidence of record and inconsistent with her activities of daily living.  (AR 26.)

### a.   Objective Evidence of Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'"  *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").  Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis."  *Burch*, 400 F.3d at 681.

As the ALJ summarized, Plaintiff testified that she is limited to "lifting/carrying less than a gallon of milk in her right hand," has difficulty lifting, is unable to reach up with her arms, and has pain with reaching forward after 10 minutes" and carrying a purse on her shoulder.  (AR 24.)  In

finding Plaintiff's testimony not entirely credible, the ALJ reasoned that Plaintiff's allegations were not fully supported by the medical evidence.  (AR 24–26.)  Specifically, the ALJ found that "[t]reatment notes reflect persistent shoulder pain, and a reduced range of motion, but are not consistent with the degree of function limitation alleged."  (AR 25.)  The Court finds that the ALJ provided sufficient support for this conclusion.

Medical records identified by the ALJ (*see* AR 24) indicated mild degenerative changes in her extremities: an x-ray of Plaintiff's right shoulder from January 2018 showed a mild decrease in subcromial space of the right shoulder with spurring at the acromioclavicular joint (AR 341); an MRI of that same shoulder in December 2018 showed rotator cuff tendinosis without a tear, mild degenerative signal at labrum, moderate acromioclavicular osteoarthritis, and low grade bursitis (AR 426); an x-ray of Plaintiff's right knee showed mild degenerative changes (AR 340); and a cervical x-ray from September 2019 showed mild loss of intervertebral disc heights at C3-C7, and mild neuroforaminal narrowing at C3-C4 and C5-C6 (AR 457).  Furthermore, as discussed above, while Plaintiff's treatment providers documented pain, examinations also revealed generally normal and unremarkable findings at various appointments.  (*See* AR 367, 396, 421, 437, 440, 472, 510.)  Thus, the Court finds that the ALJ properly considered lack of support from the objective evidence as one of several "clear and convincing" reasons to discount Plaintiff's credibility.  *See Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

The Court further observes that some of Plaintiff's alleged limitations directly conflict with Dr. Khong's opinion, which the ALJ found to be most persuasive (*see* AR 26).  For example, Plaintiff testified that she is unable to lift a gallon of milk with her right hand (AR 51), whereas Dr. Khong opined that Plaintiff was capable of performing light work (AR 90, 100), which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, 20 C.F.R. § 416.967(b).  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding that the ALJ did not err where "[t]he ALJ . . . rejected [the plaintiff's] testimony that he can lift only 10 pounds occasionally in favor of Dr. Patton's contradictory opinion that he can lift up to 10 pounds frequently.")  Accordingly, to the extent

1  Plaintiff's alleged limitations contradicted Dr. Khong's opinion, the ALJ did not err in discounting

2  Plaintiff's testimony.

3  **b.  Plaintiff's Activities**

4  It is appropriate for an ALJ to consider a claimant's activities that undermine claims of

5  severe limitations in making the credibility determination.  *See Fair v. Bowen*, 885 F.2d 597, 603

6  (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins*,

7  261 F.3d at 857; *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a determination that

8  the claimant was not entirely credible by identifying inconsistencies between the claimant's

9  complaints and the claimant's activities.).  It is well-established that a claimant need not "vegetate

10  in a dark room" to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.

11  1987).  However, if a claimant can spend a substantial part of their day engaged in pursuits involving

12  the performance of physical functions that are transferable to a work setting, a specific finding as to

13  this fact may be sufficient to discredit an allegation of disability.  *Fair*, 885 F.2d at 603.  "Even

14  where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for

15  discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating

16  impairment."  *Molina*, 674 F.3d at 1113.

17  As noted above, Plaintiff alleges an inability to work due in part to numerous limitations on

18  lifting, carrying, and reaching as a result of her neck and shoulder pain.  (*See, e.g.*, AR 51.)  In

19  evaluating Plaintiff's credibility, the ALJ cited activities that were inconsistent with Plaintiff's

20  testimony about the severity of her symptoms and impairments.  As the ALJ noted and the record

21  reflects, Plaintiff is able to drive, perform her activities of daily care, assist with cleaning the house

22  a little bit, go grocery shopping with her mother when she is "feeling up to it." (AR 25, 26, 42, 55.)

23  Furthermore, in January 2018, Plaintiff reported engaging in routine exercise, such as walking and

24  biking (AR 25, 392), the latter of which requires reaching forward to hold the handlebars.

25  The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be

26  inconsistent with her alleged inability to work due to her physical impairments.  Even if some of

27  these activities do not rise to the level of transferable work skills, they are, as a whole, inconsistent

28  with allegations of completely debilitating impairment.  *Molina*, 674 F.3d at 1113.  Accordingly,

the inconsistencies between Plaintiff's activity level and his complaints constituted a clear and convincing reason to find Plaintiff's testimony not credible.  *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1168, 1175 (9th Cir. 2008).

## V.      CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Angelina Garcia Amaya.

IT IS SO ORDERED.

Dated:   **March 28, 2022**                                 */s/ Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE